IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYSHANIQUE HAMILTON | : | CIVIL ACTION |
| | : | NO. 12-0804 |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |

O'NEILL, J.                                                                                                    AUGUST 21, 2012

## MEMORANDUM

Tyshanique Hamilton brought this action against her former employer, Southeastern Pennsylvania Transportation Authority, alleging sex discrimination in violation of Title VII and the Pennsylvania Human Relations Act. SEPTA now moves to dismiss some of Hamilton's claims and to strike Hamilton's request for punitive damages. For the following reasons I will grant in part and deny in part SEPTA's motion.

## BACKGROUND

To resolve SEPTA's motion I must compare the contents of Hamilton's complaint with the allegations set forth in the charge she filed against SEPTA with the Philadelphia Commission on Human Relations. Hamilton avers in her complaint that she filed a charge with the PHRC on or about September 29, 2010, alleging "unlawful employment practices on the basis of discrimination, retaliation, and being subjected to a hostile work environment." Compl. ¶ 49(a). Hamilton did not attach a copy of the charge to her complaint. SEPTA attaches to its motion to

1

dismiss PCHR documents entitled "Amended Complaint" and "Statement of Particulars."[1]  The PCHR Amended Complaint states:

> On or about to wit, 09/29/2010 prior thereto and continuing thereafter, in Philadelphia, Penna., the Respondent(s) discriminated against the female Complainant with regard to terms, conditions and privileges of employment, including but not limited to: subjecting her to unwelcome sexual comments, failing to address her concerns and retaliating against her after reporting them to management; all because of her sex (sexual harassment) and/or retaliation.

Dkt. No. 5-3 at ECF p. 5.  According to the PCHR's Statement of Particulars, Hamilton alleged that on two occasions SEPTA colleagues confronted her with rumors that she had sexual relations with her immediate supervisor, Larry Pugh.  Id. at ECF p. 2.  These incidents occurred on August 21 and 27, 2010.  Id.  According to the Statement of Particulars, Hamilton complained of sexual harassment to her superiors and was subsequently retaliated against by being "called into the office for performance issues."  Id. at ECF p. 3.

Hamilton's PCHR charge was dual-filed with the United States Equal Employment Opportunity Commission.  Id. at p. 4.  Hamilton subsequently received a right-to-sue letter, which is dated November 16, 2011.  Dkt. No. 1-1 at ECF p. 2.  She then brought the instant action against SEPTA.  Relevant to the instant motion, Hamilton alleges the following facts that were not included in her PCHR charge.  In May 2009 coworker Lisa Summers accused Hamilton of having sexual relations with assistant director Rodney Martinez in order to obtain a promotion

---

[1] "A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiffs claims are based on the document." Miller v. Clinton Cnty., 544 F.3d 542, 550 (3d Cir. 2008) (internal quotation marks omitted). Hamilton's claims are based on her PCHR charge and the Statement of Particulars in the sense that her allegation that she exhausted administrative remedies relies on these documents. Hamilton does not dispute the documents' authenticity.

to station manager.  Compl. ¶ 10.  Hamilton denied Summers' allegations.  Id. at ¶ 11.  Hamilton reported this interaction to her supervisor John Wojokowski, who advised her to fill out a written report.  Id. at ¶ 12.  Wojokowski submitted Hamilton's report to the SEPTA Human Resources Department and Hamilton was subsequently contacted by Thomas Comber, a representative of this department.  Id.  Comber informed Hamilton that Summers had violated SEPTA's sexual harassment policy and that he would contact Hamilton with potential disciplinary action against Summers but Comber never followed up with Hamilton.  Id. at ¶ 13.

In June 2009 Human Resources informed Hamilton that she had received the station manager position and she began work in that capacity on July 14, 2009.  Id. at ¶ 10, 14.  Hamilton began working the "graveyard shift," reporting to Assistant Director Derrick Supplee and working alongside Lee King and Clyde Kirby.  Id. at ¶ 15-16.  "Comments started circulating towards the end of 2009 throughout SEPTA that Ms. Hamilton and Mr. Supplee were involved sexually."  Id. at ¶ 17.  Hamilton spoke to King about the rumors but he made no attempt to ameliorate the situation and instead informed her "that she was having problems because she was young and that nobody could understand how she got the station manager position."  Id.  Hamilton avers that she was discharged on September 29, 2011.  Id. at ¶ 47-48.

## STANDARDS OF REVIEW

I.     Rule 12(f)

SEPTA moves to dismiss the claims that are "based on" paragraphs 10 through 17.  The complaint, however, does not assert any claims that are based on those paragraphs alone.  Instead, Hamilton brings sex discrimination claims that are based on SEPTA's conduct in its entirety.  I will construe SEPTA's motion to dismiss the claims based on paragraphs 10 through

3

17 as a motion to strike paragraphs 10 through 17 pursuant to Rule 12(f). See Young v. Manor Care Health Servs., Inc., No. 03-6864, 2004 WL 953869, *2 (E.D. Pa. Apr. 20, 2004).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Partly because of the practical difficulty of deciding cases without a factual record it is well established that striking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." N. Penn Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994) (internal quotation marks omitted). "The Court has considerable discretion in disposing of a motion to strike under Rule 12(f)." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (internal quotation marks omitted).

**II.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech.

Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## DISCUSSION

**I.     Paragraphs 10 through 17**

    **A.     Exhaustion**

SEPTA argues that the allegations in paragraphs 10 through 17, which concern events that took place in 2009, were not exhausted administratively. Where as here a plaintiff filed an

administrative charge but the defendant argues that the plaintiff's Title VII complaint includes some claims that were not exhausted, "[c]ourts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the commission." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). "A timely complaint to the EEOC charging discrimination may be enlarged to include other alleged discrimination that is reasonably related to the discrimination set forth in the original timely complaint to the EEOC." Money v. Provident Mut. Life Co., No. 04-846, 2004 WL 1243739, at *2 (E.D. Pa. June 3, 2004). Additionally, "[c]ourts must broadly interpret the original EEOC charge, because the charge is filled out by a layperson and is not designed to be a hurdle to adjudication." Id.

Hamilton's PCHR charge and the Statement of Particulars reflect that she alleged that in August 2010 she was subjected to unwelcome comments that she was having sexual relations with her supervisor and that SEPTA failed to address her concerns once she reported them to SEPTA. Dkt. No. 5-3 at ECF pp. 2-3 & 5. Similarly, paragraphs 10 through 17 of the complaint allege that May 2009 and "toward the end of 2009" Hamilton was subjected to rumors that she was sleeping with her supervisors, that Hamilton complained to SEPTA and that SEPTA failed to remedy the situation. The complaint's allegations of sexual harassment are reasonably related to the sexual harassment alleged in Hamilton's administrative charge. I will therefore not strike paragraphs 10 through 17 on the ground that they were not administratively exhausted.

**B.     Timeliness**

SEPTA argues in the alternative that the allegations within paragraphs 10 through 17 are

barred by the statute of limitations.  Under Title VII Hamilton had 300 days from the date of the discriminatory conduct to file a charge with EEOC because she "initially instituted proceedings with a State or local agency with authority to grant or seek relief." 42 U.S.C. § 2000e-5(e)(1).  The PHRA requires that Hamilton lodge a charge with the Pennsylvania Human Relations Commission "within one hundred eighty days after the alleged act of discrimination." 42 Pa. Cons. Stat. § 959(h).  "Filing a discrimination charge with the Philadelphia Commission on Human Relations . . . is considered tantamount to filing a complaint with the PHRC." Smith-Cook v. Nat'l R.R. Passenger Corp., No. 05-880, 2005 WL 3021101, at *3 n.7 (E.D. Pa. Nov. 10, 2005).  Hamilton filed her PCHR charge by September 29, 2010. See Dkt. No. 5-3 at ECF p. 4.  Paragraphs 10 through 17 of the complaint in this case concern events occurring between May and November of 2009.

      The Supreme Court has stated that in determining the timeliness of an administrative charge containing hostile work environment allegations "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002).  The Court went on to hold that "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id. at 122.  Hamilton alleged to the PCHR that in August 2010 she was subjected to a hostile work environment stemming from rumors that she had sexual relations with her supervisor.  Dkt. No. 5-3 at ECF p. 3.  Hamilton brought her PCHR charge by September 29, 2010; accordingly, the August 2010 acts of harassment fall within the statutory

7

time periods for Title VII and the PHRA. The harassment alleged in paragraphs 10 though 17 of the complaint, like the August 2010 harassment alleged in the PCHR charge, stems from rumors that Hamilton had sexual relations with her supervisors. I therefore consider the acts alleged in paragraphs 10 through 17 of the complaint to be part of the same unlawful employment practice alleged in the PCHR charge. See Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483 (3d Cir. 1997) (concluding that incidents of harassment were not time-barred where harassment "constituted a continuous pattern of derogatory remarks, rude behavior, and discriminatory conduct"). Therefore, I will not strike paragraphs 10 through 17 on the ground that their allegations are untimely.

## II.     Retaliation Claims

SEPTA also moves to dismiss the complaint's retaliation claims pursuant to Rule 12(b)(6). SEPTA argues that Hamilton failed to exhaust these claims because she did not bring an administrative charge alleging retaliatory discharge. SEPTA's argument might carry weight if the complaint alleged retaliatory discharge. Hamilton's retaliation claims, however, do not mention that particular claim. She instead alleges that SEPTA discriminated against her with respect to "compensation, terms, conditions, and privileges of employment" in retaliation for complaining about discrimination. Id. at ¶¶ 86 & 94. It is undisputed that Hamilton alleged retaliation in her PCHR charge. Therefore, I will not dismiss Hamilton's retaliation claims on the ground that she failed to exhaust them.

To the extent Hamilton's retaliation claims implicitly allege retaliatory discharge, Hamilton has sufficiently exhausted these claims. In Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984), the Court of Appeals addressed a scenario in which "discriminatory actions continue after

the filing of an EEOC complaint." Id. at 237.  The plaintiff in Waiters filed an administrative charge alleging retaliation before she was discharged.  Id. at 236.  She subsequently experienced new acts of retaliation, including termination of employment, after filing the administrative charge.  Id.  The Court of Appeals noted that it has "permitt[ed] suits based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint, without requiring the victim to file additional EEOC complaints and wait another 180 days to sue."  Id. at 237.  The Court held that in both plaintiff's EEOC charge and in her claim regarding her subsequent ultimate discharge "the core grievance – retaliation – is the same" and thus the retaliatory discharge claim was not barred for failure to exhaust.  Id. at 238.

SEPTA correctly notes that the Supreme Court in Morgan noted that termination, unlike acts that contribute to a hostile work environment, is a "discrete act" that "constitutes a separate actionable employment practice."  Morgan, 536 U.S. at 114.  SEPTA argues that Hamilton should therefore have to file a separate administrative charge alleging retaliatory discharge. Waiters, however, remains good law.  Additionally, since Morgan was decided this Court has repeatedly concluded that retaliatory acts occurring after the filing of an administrative charge are exhausted where the those acts are within the scope of or reasonably related to the conduct alleged in the original administrative claims .  See Baur v. Crum, --- F. Supp. 2d ---, 2012 WL 1071143, at *10 (E.D. Pa. Mar. 30, 2012); Lin v. Rohm & Haas, Co., --- F. Supp. 2d ---, 2012 WL 1019614, at *10-11 (E.D. Pa. Mar. 26, 2012); Albright v. City of Phila., 399 F. Supp. 2d 575, 584 (E.D. Pa. 2005).  Hamilton's retaliatory discharge is reasonably related to the retaliation alleged in her PCHR charge because both acts of retaliation stem from Hamilton's complaints

about sexual harassment. Accordingly, to the extent Hamilton alleges retaliatory discharge claims, I will not dismiss the claims for failure to exhaust.

**III.    Punitive Damages**

SEPTA moves to strike Hamilton's requests for punitive damages. Hamilton requested punitive damages for her Title VII claims but not for her PHRA claims. See Compl. ¶¶ 56, 65, 73, 81, 87 & 96. In light of SEPTA's motion Hamilton now agrees that her requests for punitive damages should be struck. Therefore, I will strike the punitive damages requests in Hamilton's Title VII claims. SEPTA argues that I should additionally strike requests for punitive damages in Hamilton's PHRA claims, but these claims do not seek punitive damages. Accordingly, in granting this part of SEPTA's motion, I am removing all punitive damages requests from this case.

An appropriate Order follows.